# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GEORGE W. GILLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 12-12043-PBS |
| BRIAN CLARK and | ) | |
| ROBERT KIMBALL, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION ON
## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

June 13, 2014

DEIN, U.S.M.J.

## I.  <u>INTRODUCTION</u>

The plaintiff, George W. Gillis ("Gillis"), is a resident of Norton, Massachusetts.
On about September 12, 2012, Gillis filed the instant action in the Bristol County
Superior Court against Brian Clark ("Clark"), the Chief of Police for the Town of Norton,
and Robert Kimball ("Kimball"), a member of the Town's Board of Selectmen.  Gillis
alleges that Clark and Kimball deprived him of his right to free speech under the First and
Fourteenth Amendments to the Constitution, as well as under the Massachusetts
Declaration of Rights, by confronting him in an intimidating manner and threatening to
sue him for displaying signs containing disparaging statements about them.  By his
amended complaint, Gillis has asserted claims against each of the defendants for

violations of his civil rights (Counts I and III) and intentional infliction of emotional distress (Counts II and IV).

On November 1, 2012, the defendants removed the matter to this court, pursuant to 28 U.S.C. § 1331, on the basis of "federal question" jurisdiction. In their removal papers, the defendants indicated that removal was appropriate because the case involved claims that had been brought pursuant to 42 U.S.C. § 1983 ("Section 1983") and arose out of the Constitution of the United States. The plaintiff did not oppose the removal or move to remand the matter to the state court. Consequently, the parties have been litigating the case in this forum for more than a year and a half.

The matter is before the court on the "Defendants' Motion for Summary Judgment" (Docket No. 30). By their motion, the defendants contend that they are entitled to qualified immunity on the plaintiff's civil rights claims because the evidence is insufficient to show that they violated Gillis' constitutional rights. They also contend that the plaintiff has failed to present sufficient evidence to support his claims for intentional infliction of emotional distress. Accordingly, the defendants are seeking judgment as a matter of law on all of Gillis' claims against them.

The plaintiff has opposed the motion, both on the grounds that there are disputed issues of fact which preclude summary judgment in favor of the defendants, and on the grounds that this court lacks subject matter jurisdiction over the parties' dispute. Thus, although the plaintiff did not oppose the removal of the matter from the state court, and has not previously challenged this court's jurisdiction, he now argues that his civil rights

claims were brought solely under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H and 11I ("MCRA"), and not under Section 1983.  Because he contends that his claims arise exclusively under state law, Gillis maintains that this court lacks jurisdiction to adjudicate those claims, and that the matter must be remanded to the state court.  He further argues that even if the court has jurisdiction over the matter, the defendants have failed to show that there are no disputed issues of fact, and that they are entitled to judgment as a matter of law.

As described below, this court finds that the plaintiff's claims arise under federal law, and that this court has federal question jurisdiction over the instant litigation.  This court also finds that when the facts are viewed in the light most favorable to the plaintiff, they fail to support any of his claims on the merits.  Accordingly, and for all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the defendants' motion for summary judgment be ALLOWED.

## II. <u>STATEMENT OF FACTS</u>[1]

On summary judgment, "[t]he Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor." <u>PC Interiors, Ltd. v. Tucci Constr. Co.</u>, 794 F. Supp. 2d 274, 275 (D. Mass. 2011). Applying this standard, the relevant facts are as follows.

### <u>History of Tensions Between the Parties</u>

The plaintiff, Gillis, has resided in the Town of Norton with his family since 1990. (Pl. Ex. A (Gillis Aff.) ¶ 2). He also operated a trucking business in the Town during the time period from 2004 to 2009. (<u>Id.</u> ¶ 3). At all times relevant to this action, Defendant Kimball was a member of the Norton Board of Selectmen. (<u>See id.</u> ¶ 5). Defendant Clark was Norton's Chief of Police. (<u>See id.</u> ¶ 8).

According to Gillis, he had "problems" with both the Norton Selectmen and officers in the Norton Police Department dating as far back as December 2006. (<u>Id.</u> ¶ 6). For example, Gillis claims that he and Kimball often had differences of opinion, and that on one occasion, when he complained to Kimball about inappropriate behavior by the town manager, Kimball became defensive and acted belligerently toward him. (<u>Id.</u> ¶ 5).

---

[1] Unless otherwise indicated, the facts are derived from (1) the Defendants' Concise Statement of Material Facts of Record as to Which the Moving Party Contends There is No Genuine Issue to be Tried ("DF") (Docket No. 32); (2) the exhibits attached to the Defendant's Motion for Summary Judgment ("Def. Ex. __") (Docket No. 30); (3) the Plaintiff's Concise Statement of Material Facts That the Opposing Party Contend There Exists a Genuine Dispute ("PF") (Docket No. 51); and (4) the exhibits attached to the Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl. Ex. __") (Docket No. 49).

Additionally, Gillis contends that he and his family were subjected to repeated and unjustified harassment by members of the Norton Police Department. (See id. ¶¶ 6-9). After one incident during which a police sergeant allegedly acted abusively toward Gillis and placed him under arrest without justification, the plaintiff filed a complaint and then brought a lawsuit against the offending officer, among others. (Id. ¶¶ 6-7). According to Gillis, the police took no action in response to his complaint, and his lawsuit accomplished nothing other than to generate further hostility toward him from the Norton police. (Id.).

The record indicates that the relationship between Gillis and defendant Clark became especially tense following an incident that occurred on December 9, 2008 and involved criminal charges against the plaintiff. On that date, Gillis was backing his truck into a construction site in Westwood, Massachusetts when he struck a pedestrian who was videotaping a tractor with his back to the entrance of the site. (Def. Ex. G at 1). The pedestrian died from his injuries, and Gillis was charged with motor vehicle homicide. (Id.; PF ¶ 2). He was later acquitted following a trial in the Dedham District Court. (Gillis Dep. at 34-35).[2] Gillis contends, and Clark denies, that Clark was involved in the decision to bring the criminal charges against him. This factual dispute, however, is not

_____

[2] The Deposition of George W. Gillis ("Gillis dep.") can be found at Pl. Ex. A. Additionally, excerpts from Gillis' deposition can be found at Def. Ex. A.

material to the issues raised by the motion for summary judgment. Gillis' version of events is described herein in order to put the subsequent, relevant events in context.[3]

According to Gillis, he spoke to the investigating officer, Stephen Conley, of the Westwood Police Department regarding the circumstances surrounding the decision to charge him with motor vehicle homicide. (Id. at 44-45; Gillis Aff. ¶ 10).[4] Officer Conley told the plaintiff that there had been a telephone conversation between Clark and the Westwood Chief of Police, William Chase, during which Clark had described the plaintiff as "a troublemaker and a problem." (Gillis Dep. at 45; Gillis Aff. ¶ 10). Officer Conley also told Gillis that Chief Chase had directed him to charge the plaintiff with motor vehicle homicide shortly after that conversation took place. (Gillis Aff. ¶ 10). Gillis alleges that he later spoke to Clark, and asked Clark if he had discussed the investigation with the Westwood police. (Id. ¶ 11). Clark told Gillis that he had spoken to Chief Chase at a meeting, and had told Chief Chase that Gillis was a hard worker and a good guy. (Id.). However, the plaintiff did not believe him. (Id.). Instead, Gillis believed that Clark had been influential in the decision to charge him with a serious crime. (See id. ¶ 13; Am. Compl. (Docket No. 15) ¶ 7).

---

[3] Clark's response to Gillis' version of events can be found at DF ¶¶ 9, 14, 19-27 and PF ¶¶ 4-6.

[4] The Affidavit of George W. Gillis ("Gillis Aff.") can be found at Pl. Ex. A.

## The Dispute Regarding Gillis' Signs

At some point thereafter, Gillis posted four different signs on his property criticizing Clark, Chief Chase, and the Norton Board of Selectmen. (DF ¶ 1). The signs, and the defendants' reactions thereto, form the basis of Gillis' complaint.

Gillis hired a sign company to create three of the signs, which Gillis nailed to his house. (Id.). One of those signs read, "Chief Clark is corrupt" and another read, "Chief Chase from Westwood is corrupt." (Gillis Dep. at 56-57). The third sign listed the Norton Selectmen by name, including the defendant Kimball, and described them as "corrupt." (Id. at 57). Gillis created the fourth sign himself and attached it to a tree in his yard. (Id.). That sign read, "Chief Clark You Suck." (Id.). As described below, the plaintiff's claims in this action arise out of the defendants' threats to sue Gillis over the contents of the signs.

On May 7, 2012, Clark visited his mother who lives next door to Gillis. (Gillis Aff. ¶ 12; Gillis Dep. at 35). At some point over the course of the visit, the parties engaged in a heated conversation regarding Gillis' signs. (Id.; DF ¶ 4). During the conversation, Clark stated that he did not like the signs, and Gillis replied that he had a First Amendment right to express his views. (Id.). Clark then threatened to sue the plaintiff for posting signs containing disparaging statements about him. (Gillis Aff. ¶ 12; DF ¶¶ 4, 7).

Although Clark made no further statements, the plaintiff claims that he felt threatened by Clark's comment. (See Gillis Dep. at 72). As Gillis has explained,

"[g]iven the past history where Chief Clark had contacted Chief Chase and had me charged with motor vehicle homicide, I was fearful and felt threatened that he would sue, and that as the police chief he would have me again charged with a crime." (Gillis Aff. ¶ 13). However, there is no evidence that Clark ever initiated a lawsuit against Gillis or that Gillis was ever charged with another crime. Nor is there any evidence indicating that the plaintiff ever took down his signs. Instead, it is undisputed that the signs remained posted on Gillis' property for at least a year following his conversation with Clark, and that Gillis continued to express his view that the defendant was corrupt. (Id. ¶ 15; Gillis Dep. at 57-58, 64).

In addition to posting signs on his property, Gillis periodically went to the center of Norton and held up signs describing the defendants as corrupt. (Gillis Dep. at 60-61). In August 2012, Kimball approached Gillis at one of the local banks. (Id. at 20-21, 73; Gillis Aff. ¶ 14). Kimball told the plaintiff that he did not like the signs, and that if Gillis did not remove them and stop displaying them in town, he was going to file a lawsuit against the plaintiff. (Gillis Dep. at 73; Gillis Aff. ¶ 14). Given Kimball's position on the Norton Board of Selectmen, Gillis believed that Kimball would arrange to have the police charge him with a crime. (Gillis Aff. ¶ 14). As described above, however, there is no evidence that the plaintiff was ever charged with another crime. Nor is there any evidence showing that Kimball ever filed a lawsuit against Gillis. Moreover, it is undisputed that after his confrontation with Kimball, Gillis continued to post his signs and to express his opinion that Kimball was corrupt. (Id. ¶ 15; Def. Ex. A at 57-58, 64).

**Procedural History**

On about September 12, 2012, the plaintiff filed the instant action in Bristol County Superior Court alleging that Clark and Kimball had violated his civil rights and intentionally inflicted emotional distress upon him by interfering with his right to free speech. (See Docket No. 1 at 1; Compl. (Docket No. 1-1)). The original complaint made no specific reference to either Section 1983 or the MCRA. (See generally Compl.). Rather, in paragraph 4 under the heading "General Allegations," Gillis alleged as follows:

> The plaintiff brings the instant cause of action for intentional inflic-
> tion of emotional distress, and for interference with his right to free
> speech as guaranteed by the First Amendment to the Constitution of
> the United States and brings this action pursuant to General Laws
> Chapter 250, Section 5B.

(Id. ¶ 4). He also alleged, in Counts I and III, that each of the defendants "did deliber-
ately and intentionally use threats and intimidation in an effort to coerce the plaintiff from the lawful exercise of his freedom of speech[,]" and that by doing so, they "did violate the plaintiff's civil rights." (Id. ¶¶ 14-15, 20-21). He further alleged that "as a direct and proximate result of the defendant's conduct the plaintiff's right to free speech was impeded and the plaintiff suffered mental anguish and emotional distress." (Id. ¶¶ 16, 22). Gillis demanded punitive damages, as well as compensatory damages, interest costs and attorney's fees, as relief for the alleged violations of his civil rights. (Id. at Counts I and III).

On November 1, 2012, the defendants removed the matter to this court on the basis of federal question jurisdiction.  (See Docket No. 1-2).  In their Notice of Removal, the defendants asserted in relevant part that

> [this] action is a civil action of which this Court has original juris-
> diction under the provisions of 42 U.S.C. Section 1983, and is one
> which may be removed to this Court by the defendant pursuant to the
> provisions of 28 U.S.C. Section 1441.  This is an action alleging
> claims including those arising out of the Constitution of the United
> States.

(Docket No. 1 ¶ 2).  The plaintiff did not object to the defendants' characterization of the case or to the removal of the litigation to federal court.  Moreover, the plaintiff has never moved for a remand of the matter to the state court.  Nevertheless, Gillis now asserts that his claims arise only under state law, and that this court lacks subject matter jurisdiction over the parties' dispute.

On January 29, 2013, the plaintiff filed an Amended Complaint.  The only difference between the original Complaint and the Amendment Complaint is paragraph 4, which now reads as follows:

> The plaintiff brings the instant cause of action for intentional inflic-
> tion of emotional distress, and for interference with his right to free
> speech as guaranteed by the First and Fourteenth Amendments to the
> Constitution of the United States and Articles I, IV, and XIX of the
> Massachusetts Declaration of Rights, and brings this action pursuant
> to General Laws Chapter 12, Section 11H-I.

(Am. Compl. ¶ 4).  Gillis made no alterations to Counts I through IV, in which he continues to assert claims against each of the defendants for violations of his civil rights and intentional infliction of emotional distress based on their alleged interference with his

right to free speech.  (See id. at Counts I-IV).  In addition, he continues to seek both

compensatory and punitive damages as a result of the alleged civil rights violations.  (See

id. at Counts I and III).  Nevertheless, Gillis contends that the Amended Complaint

asserts only a claim under the MCRA, and that the First and Fourteenth Amendments to

the United States Constitution and Articles I, IV and XIX of the Massachusetts

Declaration of Rights are cited only as a basis of his MCRA claim.

Additional factual details are described below to the extent they are relevant to this

court's analysis.

## III.  ANALYSIS

### A.    Summary Judgment Standard of Review

"The role of summary judgment is 'to pierce the pleadings and to assess the proof

in order to see whether there is a genuine need for trial.'"  PC Interiors, Ltd. v. J. Tucci

Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec.

Co., 950 F.2d 816, 822 (1st Cir. 1991)).  Accordingly, the burden is upon the moving

party to show, based upon the discovery and disclosure materials on file, and any

affidavits, "that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine'

if it 'may reasonably be resolved in favor of either party.'"  Vineberg v. Bissonnette, 548

F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.

1990)).  "A fact is material only if it possesses the capacity to sway the outcome of the

litigation under the applicable law."  Id. (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue." PC Interiors, Ltd., 794 F. Supp. 2d at 275. "[T]he nonmoving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). "The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor." PC Interiors, Ltd., 794 F. Supp. 2d at 275. "Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Id.

**B.     Subject Matter Jurisdiction**

Gillis argues, as a threshold matter, that he has not alleged any federal cause of action, and that his claims arise only under state law. (Pl. Mem. re: Juris. (Docket No. 64) at 3-4). Therefore, he contends that this court lacks subject matter jurisdiction, and that the case must be remanded to the state court. (Id. at 4). For the reasons that follow, this court concludes that Gillis has alleged violations of his federal constitutional rights, which state a claim under Section 1983. Accordingly, this court finds that the removal from the state court was proper.

"Removal of a civil action from state to federal court is proper only if the action initially could have been brought in the federal court." R.I. Fishermen's Alliance, Inc. v. R.I. Dep't of Envtl. Mgmt., 585 F.3d 42, 47 (1st Cir. 2009). "If it appears before final judgment that a case was not properly removed, because it was not within the original jurisdiction of the United States district courts, the district court must remand it to the state court from which it was removed." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 8, 103 S. Ct. 2841, 2845, 77 L. Ed. 2d 420 (1983). Because the parties are all from Massachusetts, and there is no diversity of citizenship in this case, "there is no conceivable basis for federal jurisdiction apart from 28 U.S.C. § 1331[.]" R.I. Fishermen's Alliance, Inc., 585 F.3d at 47. Therefore, "the propriety of removal hinges on whether [this] court [has] federal question jurisdiction." Id. At issue is whether Gillis has pleaded "a cause of action that has its roots in federal law (say, a claim premised on the United States Constitution or on a federal statute)." Id. at 48 (internal quotation omitted). This court finds that he has.

The plaintiff argues that there can be no federal question jurisdiction because "a reading of the Complaint and/or Amended Complaint, establishes that the plaintiff made a specific reference to the Massachusetts Civil Rights Act, with a specific reference to General Laws Chapter 12, Section 11H-I[,]" and that "[n]either the Complaint nor the Amended Complaint make any reference to 42 U.S.C. § 1983." (Pl. Mem. re: Juris. at 3). This court disagrees. The Supreme Court has long held that "the question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded

complaint.'" Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 808, 106 S. Ct.

3229, 3232, 92 L.Ed. 2d 650 (1986) (quoting Franchise Tax Bd., 463 U.S. at 9-10, 103 S.

Ct. at 2846-47). Accordingly,

> whether a case is one arising under the Constitution or a law or
> treaty of the United States, in the sense of the jurisdictional statute,
> ... must be determined from what necessarily appears in the plain-
> tiff's statement of his own claim in the bill or declaration, unaided
> by anything alleged in anticipation of avoidance of defenses which it
> is thought the defendant may interpose.

Franchise Tax Bd., 463 U.S. at 10, 103 S. Ct. at 2846 (quoting Taylor v. Anderson, 234

U.S. 74, 75-76, 24 S. Ct. 724, 724, 58 L. Ed. 1218 (1914)) (alteration omitted).

Moreover, "[s]ince a defendant may remove a case only if the claim could have been

brought in federal court, ... the question for removal jurisdiction must also be determined

by reference to the 'well-pleaded complaint.'" Merrell Dow Pharm., Inc., 478 U.S. at

808, 106 S. Ct. at 3232. A court must "look beyond the statutory citations in the

pleadings to the nature of the claims as they appear on the face of the complaint at the

time the petition for removal was filed." Hood v. City of Boston, 891 F. Supp. 51, 54 (D.

Mass. 1995). If the plaintiff's "allegations of violations of federal constitutional rights,

such as are made in the original complaint, are sufficient to state a claim that arises under

42 U.S.C. § 1983[,]" the matter will fall within this court's subject matter jurisdiction

notwithstanding the lack of any specific reference to the federal statute. See id. (finding

that removal was proper, despite lack of reference to Section 1983 in the complaint,

where plaintiff's allegations of violations of federal constitutional rights were sufficient to state a claim arising under Section 1983). That is the situation in the instant case.

Neither Gillis' complaint nor his amended complaint makes any reference to Section 1983. However, both of Gillis' complaints allege, inter alia, that defendants violated plaintiff's rights under the First Amendment to the United States Constitution, and seek, inter alia, punitive damages for such violation. "These allegations are sufficient to state a claim under 42 U.S.C. § 1983 that is within the 'original jurisdiction' of this court[.]" Id. at 52. See also Therrien v. Hamilton, 881 F. Supp. 76, 79-80 (D. Mass. 1995) (finding that a federal question arose from the face of the complaint, which expressly referred "to protected conduct under the First Amendment to the United States Constitution," even though plaintiff had removed all references to 42 U.S.C. §§ 1983 and 1985 and purported to proceed only under the MCRA). In fact, since punitive damages are not recoverable under the MCRA, but are recoverable in § 1983 cases, the only logical interpretation of Gillis' complaint is that he was proceeding under both the federal and state law. See Hood, 891 F. Supp. at 52-53 (explaining that the law of Massachusetts "does not allow for punitive damages" for violations of Mass. Gen. Laws ch. 12, § 11I, and that the complaint must be viewed as containing a § 1983 claim since the plaintiff could only recover punitive damages on his federal claims under § 1983); Gardner v. Governor Apartments Assocs., 396 Mass. 661, 663 n.2, 488 N.E.2d 3, 5 n.2 (1986) (same).

The allegations of Gillis' complaint satisfy the pleading requirements of a § 1983 action because they show first, that the challenged conduct was "attributable to a person acting under color of state law" and second, that the conduct "worked a denial of rights secured by the Constitution or by federal law." <u>Sotos v. Flores</u>, 103 F.3d 1056, 1061 (1st Cir. 1997). Specifically, the plaintiff, in both his original and amended complaints, has asserted claims against municipal officials for interference with his right to free speech as guaranteed by the First Amendment "to the Constitution of the United States[.]" (Compl. ¶ 4; Am. Compl. ¶ 4). Where, as here, "it is evident that federal law or the United States Constitution creates the cause of action on the face of the complaint[,]" and "the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law" (i.e., a violation of plaintiff's First Amendment rights), the complaint should be deemed to assert a federal question, even absent an express citation to federal law. <u>Therrien</u>, 881 F. Supp. at 82.

Finally, the fact that the MCRA has different elements does not preclude the conclusion that Gillis has asserted a claim under § 1983. Thus, under the MCRA, the plaintiff must prove that his "constitutional rights were interfered with through threats, intimidation or coercion" while no such proof is required in a § 1983 claim. <u>See</u> <u>Hood</u>, 891 F. Supp. at 54. The fact that Gillis has pleaded threats, intimidation or coercion,

however, simply means that he has plead both a § 1983 claim and a claim under the MCRA. See id.[5]

In sum, Gillis has asserted a claim under § 1983. As he apparently recognized since he litigated in this court for more than a year and never sought to remand this action, his complaint raises a question of federal law over which this court has jurisdiction. Thus, it is appropriate to address the defendants' motion for summary judgment on the merits.

## C.    Counts I and III: Claims for Violations of Plaintiff's Civil Rights

As described above, Counts I and III of the Amended Complaint assert claims against the defendants for violations of Gillis' civil rights. The defendants argue that they are protected from liability for these claims pursuant to the doctrine of qualified immunity. (Def. Mem. (Docket No. 31) at 12-14). They further argue that to the extent Gillis is alleging claims against them under the MCRA, he has failed to present evidence showing that the defendants used threats, intimidation or coercion as those terms are defined under Massachusetts law. (Id. at 14-16). Therefore, they contend that any such claims are not actionable. (Id.). This court finds that summary judgment is warranted for the reasons articulated by the defendants.

---

[5] The MCRA is also distinguishable from a § 1983 claim in that the MCRA allows for a claim against a private defendant while § 1983 does not. That distinction is irrelevant in the instant case against public defendants. "Unlike the expanded jurisdiction created by the MCRA against a *private* defendant, the First Amendment claim against a *public* defendant is indistinguishable from an MCRA claim against a *public* defendant." Therrien, 881 F. Supp. at 81.

**<u>Qualified Immunity</u>**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[6] <u>Pearson v. Callahan</u>, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)).

> Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

<u>Id.</u> (quotations and citations omitted).

The determination whether an official is entitled to qualified immunity requires an assessment as to whether the facts alleged or shown by the plaintiff "make out a violation of a constitutional right" and, if so, "whether the right at issue was clearly established at the time of defendant's alleged misconduct." <u>Id.</u> at 232, 129 S. Ct. at 815-16 (quotations and citations omitted). The court has the discretion to determine in which order to address this two-step analysis. <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 269-70 (1st Cir.

---

[6] "Massachusetts has adopted the standard of qualified immunity for public officials under § 1983 and applied it to suits brought under the [Massachusetts] Civil Rights Act." <u>Shaheed-Muhammad v. Dipaolo</u>, 393 F. Supp. 2d 80, 94 (D. Mass. 2005). Therefore, the same standard applies to all of the plaintiff's civil rights claims.

2009). Here, the court does not need to go beyond the first step because the undisputed facts do not support a claim for violation of Gillis' constitutional rights.

Gillis claims that the defendants' threats to take legal action against him for displaying his signs interfered with his right to free speech under the First Amendment, as applicable to the States through the Fourteenth Amendment, and with his right to free speech under the Massachusetts Declaration of Rights. "Because the protection of free speech in the Massachusetts Declaration of Rights mirrors the First Amendment," it is appropriate to "discuss the state-law component [of these claims] under the First Amendment's umbrella." Vickowski v. Hukowicz, 201 F. Supp. 2d 195, 205 (D. Mass. 2002).

In order to show that a defendant's conduct resulted in the deprivation of rights under the First Amendment, the plaintiff must demonstrate that the defendant intended to inhibit his speech, "and that the defendant's conduct had a chilling effect on the protected speech that was more than merely 'speculative, indirect, or too remote.'" MacFarlane v. Kenison, No. CIV. 98-353-M, 1999 WL 813956, at *4 (D.N.H. Aug. 31, 1999) (quoting Sullivan v. Carrick, 888 F.2d 1, 4 (1st Cir. 1989)). See also Willoughby v. Town of Tisbury, 750 F. Supp. 2d 374, 381 (D. Mass. 2010) (finding that plaintiffs failed to state a claim under the First Amendment where they had "not pled facts sufficient to show that Defendants' actions in fact chilled or intimidated their speech"). The facts presented in the instant case, even when viewed in the light most favorable to Gillis, fail to establish that the defendants' conduct had the requisite chilling effect on the plaintiff's speech. It

is undisputed that following his confrontations with the defendants, Gillis continued to display his signs and to express his opinions that the defendants were corrupt. (Gillis Aff. ¶ 15; Gillis Dep. at 57-58, 64). In fact, there is no dispute that the signs remained posted on the plaintiff's property for at least a year following the heated exchange between Gillis and Clark on May 7, 2012. (See Gillis Dep. at 57-58, 64). Accordingly, the record demonstrates that the defendants' statements to the plaintiff, including their threats to initiate legal action against him, had no deterrent effect on Gillis' freedom of expression and did not interfere with his constitutional rights.

The plaintiff contends that although he "continued in the exercise of [his] civil rights in stating that Kimball and Clark were corrupt, [he] always felt threatened and did not make these statements in the same manner as before [he] was threatened" with legal action. (Gillis Aff. ¶ 15). This assertion is not adequate to support a claim under the First Amendment. As described above, "[w]here a chilling effect is speculative, indirect or too remote, finding an abridgment of First Amendment rights is unfounded." Sullivan, 888 F. 2d at 4. Here, Gillis has not offered any concrete evidence to show how the defendants' conduct altered his actions or adversely impacted his ability to express his opinions. Moreover, the fact that he continued to display his signs, despite the displeasure expressed by the Chief of Police and a member of the Norton Board of Selectmen, indicates that Gillis "was anything but intimidated" by the defendants' statements. Sullivan, 888 F. 2d at 4. Accordingly, he has not presented sufficient evidence to withstand summary judgment on the grounds of qualified immunity.

## Failure to Establish Threats, Intimidation or Coercion

This court finds that summary judgment is also warranted with respect to Gillis'
claims under the MCRA because the plaintiff has failed to present evidence showing that
the defendants' actions involved threats, intimidation or coercion.  See Farrah ex rel.
Estate of Santana v. Gondella, 725 F. Supp. 2d 238, 247 (D. Mass. 2010) (explaining that
the MCRA "is 'explicitly limited' to situations 'where the derogation of secured rights
occurs by threats, intimidation or coercion' involving a specific threat of harm 'directed
toward a particular individual or class of persons'" (quoting Bally v. Northeastern Univ.,
403 Mass. 713, 718-19, 532 N.E. 2d 49 (1989)).  Pursuant to the MCRA,

> "[a] '[t]hreat ... involves the intentional exertion of pressure to make
> another fearful or apprehensive of injury or harm.  'Intimidation'
> involves putting in fear for the purpose of compelling or deterring
> conduct .... ['Coercion' involves] the application to another of such
> force, either physical or moral, as to constrain [a person] to do
> against his will something he would not otherwise have done."

Farrah ex rel. Estate of Santana, 725 F. Supp. 2d at 247 (quoting Planned Parenthood
League of Mass., Inc. v. Blake, 417 Mass. 467, 474, 631 N.E. 2d 985 (1994)) (alterations
in original).  Here, there is no evidence that the defendants coerced Gillis into removing
his signs or otherwise refraining from expressing his views about them.  Moreover, Gillis'
actions in continuing to display his signs following his confrontations with the defendants
belie any suggestion that he was intimidated by their conduct and threats to sue.  Finally,
although the defendants' statements that they would take legal action against the plaintiff
could be viewed as a threat, "a threat to use lawful means to reach an intended result is

not actionable under [the MCRA]." Sena v. Commonwealth, 417 Mass. 250, 263, 629 N.E. 2d 986, 994 (1994). Therefore, the defendants' conduct cannot support a claim under the MCRA for violations of Gillis' constitutional right to free speech.

### D. Counts II and IV: Emotional Distress Claims

In Counts II and IV of his Amended Complaint, Gillis has asserted claims against the defendants for intentional infliction of emotional distress. In order to prevail on such a claim, the plaintiff must establish that

> (1) [the defendants] "intended to inflict emotional distress or that [they] knew or should have known that emotional distress was the likely result of [their] conduct"; (2) [the defendants'] "conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community"; (3) [the defendants'] "actions ... were the cause of [the plaintiff's] distress"; and (4) "the emotional distress [the plaintiff] sustained ... was severe and of a nature that no reasonable [person] could be expected to endure it."

Brown v. Nutter, McClennen & Fish, 45 Mass. App. Ct. 212, 218, 696 N.E. 2d 953, 957 (1998) (quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144-45, 355 N.E. 2d 315, 318-19 (1976)). The defendants contend that Gillis is not able to satisfy the second and fourth elements of his claim because there is no evidence to show that the defendants' conduct was extreme and outrageous or that Gillis suffered extreme emotional distress as a result of their actions. (Def. Mem. at 16-17). This court agrees, and finds that the defendants are entitled to summary judgment with respect to these claims as well.

The Massachusetts Supreme Judicial Court ("SJC") has cautioned that "the door to recovery [for intentional infliction of emotional distress] should be opened but narrowly

and with due caution[,]" and that "[a] principal bulwark against excessively broad recovery is the requirement that the defendant must have engaged in 'extreme and outrageous' conduct." Foley v. Polaroid Corp., 400 Mass. 82, 99, 508 N.E. 2d 72, 82 (1987) (quotations and citations omitted). As the SJC has explained,

> it [is not] enough "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort"; rather, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

Id. (quoting Restatement (Second) of Torts § 46, comment d (1965)). In the instant case, Gillis has not presented evidence showing that Clark or Kimball acted in a manner that could be considered extreme, much less so extreme "as to go beyond all possible bounds of decency." The record establishes that the defendants did nothing more than speak to Gillis and threaten to sue him for posting disparaging signs about them. It also establishes that their actions did not cause the plaintiff to alter his behavior, and did not intimidate him into removing his signs. Under such circumstances, no reasonable jury could conclude that the defendants' behavior was "utterly intolerable in a civilized community." Therefore, the defendants' motion should be allowed with respect to Counts II and IV.

Gillis suggests that the defendants' threats to take legal action against him must be viewed in light of the history of hostility between the parties, including Clark's alleged

involvement in the circumstances leading up to the charges against Gillis for motor vehicle homicide. (See Pl. Opp. Mem. (Docket No. 49) ¶¶ 3-4). However, those facts, when viewed in the plaintiff's favor, do not support a claim for intentional infliction of emotional distress. There is no dispute that despite the tensions between the parties, Gillis was not deterred from challenging the defendants' character or from criticizing them publicly. The fact that the defendants reacted to this behavior by confronting Gillis and threatening legal action can hardly be viewed as the type of conduct that is actionable under Massachusetts law.

Even if Gillis had presented evidence of extreme and outrageous conduct, the record would still not be sufficient to withstand the defendants' motion for summary judgment. The plaintiff has not pointed to any testimony or other evidence in the record to show that he experienced any emotional distress as a result of the defendants' conduct. Consequently, there is no basis for a jury to conclude that Gillis' suffered emotional distress that was "severe and of a nature that no reasonable [person] could be expected to endure it." Brown, 45 Mass. App. Ct. at 218, 696 N.E. 2d at 957 (quoting Agis, 371 Mass. at 145, 355 N.E. 2d at 319). For this reason as well, the defendants' motion for summary judgment should be allowed.

## IV. CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the "Defendants' Motion for Summary Judgment" (Docket No. 30) be ALLOWED.[7]

/ s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge

---

[7] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).